### H. BLUMAN V. THE STATE.

*No. 689.    Decided March 25.*
*Motion for Rehearing Decided December 16.*

| 33 | 43 |
|----|----|
| 32 | 229 |
| 33 | 43 |
| 135 | 345 |
| 37 | 577 |
| 38 | 100 |
| 39 | 119 |
| 39 | 676 |

1. **Continuance—Practice on Appeal.**—If, when considered in connection with the other facts proven on the trial, the proposed testimony of an absent witness, for whom a continuance was applied for, appears to be probably untrue, or if it be such as could or ought not to have had any weight with the jury, this court will hold that the motion for continuance was properly overruled.

2. **Same.**—A motion for continuance will also be held to have been properly overruled where substantially the same testimony as that sought from the absent witness was introduced by the defense on the trial.

3. **Arson—Confession of Principal as Evidence Against an Accomplice—Charge Limiting Such Evidence.**—On a trial of defendant as an accomplice to arson, where the indictment named two others as principals in the crime, *Held,* that it was not error to admit in evidence the confession of one of said principals, because, under the statute, Penal Code, article 89, it is expressly provided, that "on the trial of an accomplice the evidence must be such as would have convicted the principal;"

and *held*, further, that where the confession of such principal in no way implicates the accomplice, it is not error for the court in its charge to fail to limit and restrict the consideration of such evidence to the guilt of the principal only.

4. **Same—Witness—Testimony of the Wife of Principal on Trial of an Accomplice.**—On the trial of one who is exclusively charged as an accomplice to the crime, where the principal, who is not indicted and on trial in the same prosecution, has taken the stand as a witness, and freely and fully confessed his own guilt, *Held*, that it is not error to permit the wife of said principal to testify as a witness in the case against the accomplice. [See below, subdivision 7.—REPORTER.]

5. **Evidence—Harmless Error.**—On a trial for arson, where the evidence to the effect that defendant and his clerk entered the burning storehouse together; that the clerk asked the defendant whether they should endeavor to save any of the stock, to which defendant said they would not; and where it further appeared that defendant told another witness who had taken up an armful of goods, intending to carry them from the building, to put them down, *Held*, that the court did not err in admitting other evidence to the effect that the clerk forbade the removal of goods during the fire, and gave as a reason that it might affect a recovery on the insurance policies. If error to admit this evidence, it was harmless error in the light of the other evidence. [But see subdivision 11 below.—REPORTER.]

6. **Arson—Evidence Sufficient.**—See opinion for a succinct summary of evidence which the court holds sufficient to sustain a conviction for arson.

ON MOTION FOR REHEARING.

7. **Competency of a Wife as a Witness Where the Husband is Implicated in the Crime, but Not on Trial.**—The doctrine which should prevail, under such statutes as ours, is, that if the husband, being indicted for the same offense, is a competent witness, his wife is also. It is expressly provided that if the husband be on trial, the wife can be a witness for, but not against him. Code Crim. Proc., art. 735. If a codefendant be on trial, the one not on trial may be made a witness by the State, and then the witness' wife is a competent witness also.

8. **Corroboration of an Accomplice by the Testimony of His Wife.**—The wife of an accomplice is competent as a witness to corroborate her husband, who, being an accomplice, has testified in the case. The marital relationship may affect her credibility, but not her competency, and the degree of weight to be accorded to her testimony must be left to the jury.

9. **Evidence—Acts and Declarations of Third Parties in Absence of the Accused.**—On a trial for arson, where the theory of the State was that the building was fired in order that the defendant might get the insurance on his stock of goods, and where the State was permitted to prove, over objections, that defendant's clerk—defendant not being present—told parties not to save the goods, as it might affect a recovery on their insurance policies, whereupon they threw down the goods and went out, *Held*, the evidence was inadmissible in the absence of other testimony that defendant instructed the clerk not to save the goods and to forbid their removal from the burning building.

10. **Opinion Evidence—Expert.**—On a trial for arson, where the State was permitted to ask her witness, "Do you think defendant, had he tried, could have saved any of his goods?" and the witness answered, "Yes, I think so," *Held*, the evidence was clearly inadmissible, it being impossible for the witness to be an expert at saving goods from a burning house.

11. **Evidence—Harmless Error.**—The admission of inadmissible evidence can not be considered harmless error where the jury evidently must have considered it as strong testimony in support of the State's theory of the guilt of the accused.

12.  **Defendant's Wife as a Witness—Extent of Cross-Examination of.**— Where the wife has been examined as a witness for her husband on a criminal trial, her cross-examination must be confined to the matter elicited by the direct examination, and it is error to permit her to be cross-examined as to independent matters or independent statements made by her which may be used or construed as evidence against her husband.

APPEAL from the District Court of Lee.    Tried below before Hon. BEAUREGARD BRYAN.

Appellant was convicted as an accomplice to the crime of arson, the indictment alleging that the fire was applied to the house by one Paul Kirschner and one George B. Jones, and that appellant, prior to the commission of the crime by said parties, "did unlawfully and willfully promise the said Paul Kirschner to pay him, the said Paul Kirschner, the sum of five hundred dollars to procure the commission of said offense by the said Paul Kirschner, the said H. Bluman not being present at the commission of said offense by the said Paul Kirschner and George B. Jones," etc.

Imprisonment for five years in the penitentiary was the punishment assessed against him.

In the closing paragraph of the opinion of Judge Simkins, below, will be found a very concise but clear statement of the case as made by the State's evidence, and it is deemed unnecessary to go into a detailed statement of the facts.    We will add, however, that George B. Jones, who was charged with Kirschner as principals in setting fire to the building, after he was arrested for the crime also confessed that he and Kirschner had committed the deed.    Jones was arrested by Deputy Sheriff Sparks, who testified that he had repeatedly warned Jones that what he said could be used against him; and Sparks was permitted, over objection of the defendant, to testify fully as to the confessions made to him by Jones.    This confession of Jones, as detailed by Sparks, corresponds with the confession of the coprincipal Kirschner with regard to their plans and preparations for burning the building, and the circumstances immediately attendant on the burning of the building.    It seems, however, from Jones' confession, as well as from the other evidence in the case shown, that he (Jones) did not know that Bluman was in any manner connected with his and Kirschner's plans to burn the house.    Kirschner testified that he had concealed Bluman's connection with the matter from Jones.    The testimony of the witness Sparks, detailing the confession of the coprincipal Jones, was objected to by the defendant—first, because it was hearsay; second, that it was a confession of a crime by one of the actors after its completion, and in the absence of defendant.

Another bill of exception was saved by the defendant to a portion of the testimony of Henry Jarman, a negro, who testified that on the night of the fire, and after the alarm had been given, he went with de-

fendant to his (defendant's) storehouse, when defendant opened the door, and that upon entering the house they found certain trunks, which defendant said were his wife's trunks, and requested the witness and another party to remove the said trunks to the hotel. In connection with this testimony the prosecution, over objection of defendant, was permitted to ask said witness the question, "Was one of these trunks in the middle of the aisle there?" which question was objected to as leading and suggesting the answer desired, and the witness was permitted to answer, "Yes, sir; it was pulled out in front of the door, in the aisle, when I first saw it." This testimony was elicited by the State as a circumstance to show that defendant had previously prepared his wife's trunks for removal before the building was set fire to.

Another bill of exceptions reserved by defendant was to portions of the testimony of the State's witness B. C. Dodd, who testified that he had arrived at the fire about fifteen minutes after the alarm was given, and that defendant's storehouse had not caught on fire at that time on the east and north sides; that he did not go in front, and he did not know whether it was on fire in front or not. And the prosecution was permitted, over defendant's objection, to ask the witness, "Do you think that if Bluman had tried he could have saved any of his goods?" The objection to the question was that it called for the mere opinion of the witness, who had not qualified himself to give an opinion. And the objection being overruled, the witness was permitted to answer, "Yes, sir; I think so." This witness having also testified that he had aided and assisted in carrying out goods from the adjoining storehouse, occupied by one Harris, and which house was also destroyed by the same fire, was asked, over objection of defendant, "How many goods were saved out of the Harris house that night?" the objection being that the evidence sought was immaterial and irrelevant, and the objection being overruled, the witness was permitted to answer, "I should think there were probably seven or eight of us, who carried out five or six bundles of clothing apiece to the office of the lumber yard."

The testimony of Kirk, Hillsman, Kessels, and Mrs. Emma Kirschner, and defendant's wife, Mrs. Bluman, in so far as the same was objected to by the defendant, will be found fully stated in the opinion of Presiding Judge Hurt on the motion for rehearing.

No further statement is deemed necessary.

*Rector, Thompson & Rector*, for appellant.—1. The court erred in permitting the witness Ike W. Sharp, deputy sheriff, to detail before the jury what Jones had told him he had done, and what part he (Jones) had taken in the crime charged, over the objection of the appellant that the same was, first, hearsay, and second, the statement of a crime by one of the actors after its completion, and in the absence of the appellant.

The indictment charged Paul Kirschner and George B. Jones with the offense of arson, and in same indictment appellant was charged as an accomplice in said crime by procuring said Kirschner to commit the said crime. Sparks testified that he was deputy sheriff; arrested Jones; warned Jones that what he might say could be used against him; warned him repeatedly. Jones denied at first having anything to do with it; then confessed and said he and Kirschner did it; that they used gasoline oil and a fuse, and that they got Risse and others to come and be present, and fixed everything, etc. See his testimony in full.

The testimony was inadmissible for any purpose against appellant. Authorities not needed. If the confession of Jones, as detailed by the witness, was admissible at all, it was only admissible to prove the guilt of Jones as a principal, which the indictment charged and which it was incumbent on the State to show. Objection being made to it by appellant, who was alone on trial, the court should have limited its effect at the time of its introduction, and also by its charge. This the court failed to do. The charge was generally excepted to. It was reversible error not to so limit it in the charge, whether specially excepted to or not. The error was pointed out in a motion for a new trial. Crook v. The State, 27 Texas Crim. App., 241; Simms v. The State, 10 Texas Crim. App., 131; Arnold v. The State, 9 Texas Crim. App., 435; Poston v. The State, 12 Texas Crim. App., 408; Whart. Crim. Ev., sec. 602.

This evidence, being hearsay, was not admissible to corroborate the witness Kirschner, and even if Jones had been on the stand testifying to these facts, his testimony, confessing his own participation, could only be admissible against himself, and the court would have to have so limited it.

2. The court erred in allowing the State's counsel to ask the State's witness Henry Jarman, a freedman, the following question: "Was one of these trunks in the middle of the aisle there?" and the witness to answer, "Yes, sir; it was pulled out in front of the door in the middle of the aisle when I first saw it," over the objection of the defendant that the question was leading and suggested the answer.

The State was seeking by this witness and others to show that appellant had prepared the trunks containing his wife's wedding trousseau and wedding presents, and among other things her solid silver and plated ware, ready to be taken out in the hurry of a fire. The question at that time before the jury was whether or not Bluman ran into the store with said State's witnesses Jarman and Kessel, and jerked the trunk out from under the counter where it had been placed for some weeks, or whether appellant had already, before they entered that night, pulled out this trunk into the aisle ready to be carried out; hence the importance of guarding against any leading question on so

important a point. Was the question leading? It certainly was. Was it upon a material point? It certainly was. Was it excepted to? It certainly was, and the error brought before the court again in motion for new trial.

3. The court erred in allowing the State's counsel to ask the State's witness B. C. Dodd, "Do you think that if Bluman had tried he could have saved any of his goods?" and the witness to answer, "Yes, sir; I think so," over appellant's objection that said question called for the mere opinion of the witness, who had not shown any knowledge that would have authorized him to give an opinion; and to allow the State's counsel, over appellant's objection that the same was irrelevant and immaterial, to further ask said witness, "How many goods were saved out of Harris' house that night?" and to allow said witness to state, "I should think there was probably seven or eight of us carried out five or six bundles of clothing apiece to the office of the lumber yard."

The witness Dodd did not go to Bluman's building; did not know whether or not it was on fire in front or inside. Went to Harris' store and helped to save goods. He was absolutely without any knowledge of facts upon which to base an opinion as to what Bluman might or might not have done in the way of saving his goods. There was no rule of law or of fact offered or suggested to the court as to how it could be material in the trial as to how many goods Mr. Harris succeeded in saving from the fire. Irvine v. The State, 26 Texas Crim. App., 37; Whart. Crim. Ev., sec. 405.

It can not be intelligently contended for a moment that the witness Dodd was in the possession of a single fact that authorized him to give the jury an opinion on the subject as to whether Bluman had or had not made proper efforts to save his goods. Nor were any facts developed before the jury that would authorize them to institute a comparison between the success of Harris' efforts and Bluman's efforts in saving their respective stocks of goods. It might depend on who got there first, and who volunteered to help the one and refused or failed to help the other, or whether or not a highly nervous, fainting, and sick wife required the personal care of the one and not of the other. This evidence warranted the jury in concluding Bluman was guilty, if he failed to save as many goods as Harris did. This illegal and unauthorized evidence was used strongly in the closing argument against appellant. It was illegal, excepted to, and calculated to injure the rights of appellant. This error will require a reversal.

4. The court erred in permitting State's counsel to ask the State's witness Kessel the following question, and the witness to answer over appellant's objection. First, it was leading; second, the defendant was not present; and third, it was immaterial. Question—"Did you tell Mr. J. S. Hillsman that night when you were in the store (defend-

ant's store) not to take any goods out of it?" Answer—"I don't remember if I did or not, but I don't remember it; but if Mr. Hillsman said that I did, I will not dispute his word about it." The same question was asked same witness as to what he had said to Judge L. Kirk, and the same reply made over the same objection of appellant.

The State was seeking to show, by first laying this predicate to impeach its witness Kessel, and by the testimony of Hillsman, Kirk, and others, that such statements had been made by the witness Kessel, who was appellant's clerk at the time. Hillsman did not testify at all. Kirk's testimony is found in record, pages 119 and 120. The testimony of Kessel was, that Bluman had not given him any such instruction, or rather that he had no remembrance of it. On the contrary, he details what he and Bluman did in an effort to save goods, and that Bluman told him to save the best goods. Bluman testified he never gave such orders and never heard Kessel make such a statement, and Judge Kirk says he did not think Bluman was present at the time the man that he afterwards learned was Kessel made the remark.

This court can not say that such gross violation of every fundamental rule of evidence can be passed over by saying it was error, but no damage was done. It was on a vital point as to whether Bluman was trying to burn up his stock of goods. Bluman was being made responsible for what an unauthorized person said about removing goods, and this in his absence. The special counsel for the State, who, it may be remarked, was the attorney for the insurance companies in their civil suit instituted against Bluman, dwelt in his closing argument with much vehemence upon this testimony, and said of course everybody knew Bluman had instructed Kessel not to let the goods be saved; and in the inflamed state of public sentiment this was most damaging to appellant. There was no proof, nor did the State claim, that Kessel was in any conspiracy to burn up the storehouse and goods.

It was error for the court to allow the State to prove by its witness, Judge L. Kirk, that he was in the appellant's store during the fire, and that he started to save goods, or some one in the crowd started to pick up and carry out goods from the store of appellant; but that some one, whom he afterward learned was Kessel, told them to put them down, that it might affect a recovery on insurance policies; that he did not at that time see defendant, and did not think he was present. To all of which defendant objected, because, first, the same was irrelevant and immaterial, and, second, the defendant was not present and was not responsible for what anybody else did or said, and that it had been shown that he had not authorized any such thing.

This evidence is the purest hearsay. Kessel is making a statement in the absence of appellant, which is taken by the State as the act of appellant, when appellant knew nothing of such statement, if it was made—a statement showing the grossest violation of good faith

toward the insurance companies, and, more than that, showing a most pernicious fraud being practiced on the insurance companies. All this is shown, notwithstanding Kessel had sworn that Bluman did not authorize such an act, and although Kirk swore Bluman was not there. He did not then know Kessel. Counsel for the State, in closing the argument, claimed that Bluman was acting through Kessel in not allowing his goods to be saved. If this man is to wear stripes upon such evidence as this and like evidence admitted by the court, then we might as well abandon and abrogate every rule of evidence known to the books.

The court erred in holding that Emma Kirschner was a competent witness against appellant, she being the wife of Paul Kirschner, who was jointly indicted with the appellant—the indictment charging him as a principal and appellant as an accomplice in the same crime. The appellant was alone on trial.

The district attorney had kept back a separate indictment against Kirschner, although he intended, as he stated under oath, to have presented a separate indictment on which he intended to prosecute him. The reason, given under oath by him, was that he wanted to deprive the appellant of the right, conferred by statute, to sever and have the witness Kirschner, codefendant, first tried. All the preliminary evidence will be found in bill of exceptions number 10, record 249. The statement and argument in brief of associate counsel on this point is full and explicit, and we will not enlarge on it here to any considerable extent. Was Paul Kirschner at that time prosecuted for the same offense? The charge against him, whether or not it had culminated in an indictment, was that of a principal in the crime of arson, while Bluman was charged as an accomplice in the same crime. Were they charged with the same offense? See Crook's case, 27 Texas Crim. App., 241. Technically, let us admit that they were not, but for the purpose and scope of this error complained of in this assignment, no fair man will say they were not. Kirschner was, in this indictment, charged as a principal, and he and Bluman could have been tried on this indictment together. No legal reason why not. If Kirschner was not technically indicted, he was in the spirit of the law charged with same offense. He intended to have the grand jury thereafter present a separate indictment against Kirschner, and the reason he had not already done so, was that he wanted to deprive this appellant of his legal right to claim a severance and have Kirschner tried first. Mrs. Kirschner's evidence was the only evidence outside that of her husband's that corroborated him at all. Dill v. The State, 1 Texas Crim. App. 278; 1 Greenl. on Ev., sec. 335; Whart. Crim. Ev., sec. 392, and cases cited; Morrill v. The State, 5 Texas Crim. App., 447; Cotton v. The State, 62 Ala., 12; The State v. Welch, 26 Me., 30.

The court erred in permitting the State to cross-examine Nora Bluman, a witness for the appellant and the wife of the appellant, upon facts not inquired about in direct examination, the rule being that she can only be cross-examined upon facts testified to by her in examination in chief.

The bill of exceptions shows fully what she had testified to on direct examination, and it also shows that the rule stated above was utterly ignored, over the objection of the defendant made at the time.

It was not error without prejudice. The State was trying to discredit this witness by showing that she too had a guilty knowledge of the impending disaster to the town, and that she showed it and commented on it herself. "She had a presentiment that something was going to happen." It is true, when allowed to do so, that she explained what she referred to, and that was that she had not heard from her mother for some time, etc. Will the court reverse the known and well-recognized rule with reference to the cross-examination of a wife, or hold that, if error, it was without prejudice? Can this court undertake to say how this illegal evidence might have affected the jury? Johnson v. The State, 28 Texas Crim. App., 25; Washington v. The State, 17 Texas Crim. App., 203.

*Ed. R. Sinks, Rector & Harris,* and *Jones & Garwood,* also for appellant.—1. The court erred in allowing the witness B. C. Dodd to testify, over the objection of the defendant, as to his opinion whether the defendant could have saved more of his goods, and also to testify as to how many goods were saved out of Harris' store the night of the fire, for the reason set forth in bill of exceptions number 5, in which the questions and answers appear. Cooper v. The State, 23 Texas, 336; Campbell v. The State, 10 Texas Crim. App., 560; Willson's Crim. Stats., sec. 2502.

2. The court erred in allowing the witness Benno Kessel to testify, over the objection of defendant, as to statements made by him when defendant was not present, which statements and testimony and the objections thereto are set forth in bill of exceptions number 6; and in allowing the witness Judge L. Kirk to testify, over the objection of defendant, as to statements made by Benno Kessel, in the absence of defendant, which statements and testimony and the objections thereto are set forth in bill of exceptions number 9. Willson's Crim. Stats., sec. 2499.

3. The court erred in permitting the State's counsel to ask Nora Bluman, the wife of defendant, over the objection of defendant, as to statements made by her when defendant was not present, as set forth in bill of exceptions number 11, in which said question and the answer thereto and the objections of defendant to the same fully appear.

(1) The wife of a defendant on trial can not be asked on cross-examination any question except as to matters testified to by her in her direct examination.

(2) The statement of a wife or any other witness can not be used as evidence against the defendant when he was not present.

In support of the foregoing the following authorities are cited: Creamer v. The State, 34 Texas, 173; Greenwood v. The State, 35 Texas, 587; Washington v. The State, 17 Texas Crim. App., 203; Johnson v. The State, 27 Texas Crim. App., 135.

The court permitted the counsel for the State to ask appellant's wife if she had not said after the fire, on same night, that she had a presentiment that something was going to happen. To which she answered that she did. Her testimony on the direct examination was not in reference to anything that would authorize such a question, even if appellant had been present.

The above authorities are conclusive that such a question was illegal for more reasons than one. First, she was the wife of defendant, and the question on cross-examination had no reference to what she had testified in her examination in chief; second, what she might have said was no evidence in the case whatever. It was introduced evidently to prejudice the defendant before the jury, and doubtless had the effect intended. It was in line with other errors heretofore alluded to, in the admission of testimony contrary to all recognized rules of evidence, and highly prejudicial to appellant.

4. The court erred in permitting the witness Emma Kirschner to testify in this case over the objection of defendant, because she was an incompetent witness. The reasons of said incompetency, the objection of defendant, and the evidence given by her, are fully set forth in bill of exceptions number 10.

The wife of a man who is charged with the same offense as the defendant is an incompetent witness against such defendant, unless the State first, in good faith, discharges the witness' husband. Dill v. The State, 1 Texas Crim. App., 278; 1 Greenl. on Ev., sec. 335, and foot notes 3 and 4; Id., sec. 341.

Bill of exceptions number 10 shows the facts preliminary to the introduction of the State's witness, Emma Kirschner, as a witness. The indictment under which appellant was tried is also an indictment against Paul Kirschner, the husband of said witness, and George B. Jones, as principals. There was no dismissal as to said Paul Kirschner. The district attorney stated, as per bill of exceptions, that he intended to indict said Kirschner separately at that time and prosecute him as a principal, and that he held back the indictment for it for the purpose of preventing the appellant from demanding that he be first tried. Mrs. Kirschner was allowed to testify that she overheard a conversation between appellant and her husband, in his store, on

Thursday or Friday before the fire Sunday night; that defendant said to her husband, Paul Kirschner, that he was ready for the fire to go off Sunday night, when the women folks were gone; that Bluman, appellant, promised her husband to pay him $40 or $50 on Saturday or Sunday following. This testimony was in corroboration of her husband's testimony against appellant.

It will be seen that the testimony of this witness was damaging to appellant, and was introduced to corroborate the testimony of her husband. If she was an incompetent witness, then the error in allowing her to testify was material, and would of itself require a reversal of the case. The mere fact that the district attorney was holding back a separate indictment against Paul Kirschner could not affect the admissibility of said testimony. . He was indicted in the same indictment with appellant, as a principal, and that was sufficient charge against him; and if he had not been so indicted it would not affect the question, for he was still charged with the crime, and the State intended to prosecute him on a separate indictment. He had not been discharged. Then, was his wife a competent witness against appellant, when her testimony was as much against her husband as the appellant? We think not. If by indicting two men separately, or trying them separately, you could bring on the stand the wife of the one as a witness against the other, and convict him with her testimony, then in such examination, though no question as to her husband's direct guilt were asked her, still she could be asked questions that would most certainly lead to proof of his guilt, and thereby she would be testifying against her husband. To illustrate: Suppose she were asked if she had heard a conversation between her husband and the party on trial, without asking what her husband said, and then ask her if any one was present with her at the time, and she should answer in the affirmative and give the name of the party; then the State by that means could force her to furnish the name of a witness with whose testimony a conviction could be obtained against her husband. Such is not the policy of the law. If the husband has not been discharged, then the wife is as much an incompetent witness against his codefendant, whether being tried jointly or separately, as against her husband. There is no reason in the position that, because they are tried separately, the wife therefore becomes a competent witness against the husband's codefendant. Such a rule would be a dangerous innovation of the well-established principle that a wife can not testify against her husband. It would be doing indirectly what could not be done directly.

5. The court erred in his charge to the jury in failing to limit the evidence introduced to prove the guilt of Paul Kirschner and George B. Jones, who were charged as principals in the case, as only showing their guilt, and that it could not be considered by the jury as evidence against the defendant Bluman.

(1) When the defendant is on trial as an accomplice, the State must prove the principal's guilt, and such evidence introduced for that purpose must be limited in the charge of the court.

(2) Where extraneous evidence is introduced by the State for the purpose of establishing a basis on which to prosecute the defendant on trial, the court in its charge must limit such evidence to the purpose for which it was admitted.

In support of the foregoing, the following authorities are cited: Arnold v. The State, 9 Texas Crim. App., 435; Davidson v. The State, 22 Id., 372; Washington v. The State, 23 Id., 336; Maines v. The State, Id., 568.

The court nowhere in its charge limited said evidence to Jones' and Kirschner's guilt, but it went before the jury as evidence in the case without limitation, no one being on trial but appellant. This court clearly decided in the case of Arnold v. The State, 9 Texas Criminal Appeals, 435, that a failure to limit such evidence in the charge, when the accomplice was on trial, is such error as will require a reversal of the case. It is also laid down in the other authorities above cited, that in perjury cases, where the record in the case in which the defendant is alleged to have committed the perjury is introduced, the court must limit its scope in its charge, and a failure to do so is reversible error. The propositions under this assignment are too well established to require comment.

*Searcy & Garrett*, for the State.—1. It was necessary to introduce evidence showing the guilt of the principals in the crime, and it was proper for the court to allow the witness Sparks to testify as to the confession made him by George B. Jones, one of the principals.

H. Bluman was indicted as an accomplice in the crime of arson. Paul Kirschner and George B. Jones were the principals. Penal Code, art. 89; Arnold v. The State, 9 Texas Crim. App., 438; Crook v. The State, 27 Texas Crim. App., 239.

2. At page 74 of the record the witness Jarmon testified that one of the trunks was right in front of the door when he and Bluman entered the store. He was then asked, "Was one of the trunks in the middle of the aisle there?" His answer was: "It was not directly in the middle of the aisle; there was a place between the end of the counter and the door." 1 Greenl. on Ev., sec. 434; Kennedy v. The State, 19 Texas Crim. App., 632.

3. The witness Dodd testified to the facts upon which he based his opinion. He testified that he was boarding at the Union hotel, at Giddings, the same place where Bluman was boarding; that about fifteen minutes after the alarm of fire was given he got up and dressed and started to the fire; that about half-way between the hotel and fire he met Bluman going towards the hotel with a small bundle in his

hands that he took to be books; that after passing Bluman he went on to the fire, and with others helped to remove a considerable quantity of clothing from Mr. Harris' store. Then he was asked if Bluman could have saved any of his goods had he tried, and he answered, "Yes."

Kessel testified that, after saving two or three armfuls of clothing, Bluman said he was not dressed and must go to the hotel.

Bluman left the store and did not return any more. Bluman's store was not on fire when Bluman and Kessel left it. Bluman's store was the last to burn. Ripley v. The State, 29 Texas Crim. App., 44.

4. Kessel testified: "I opened the door that night myself; Bluman and Henry Jarmon I think were present. I did not go into the store just then. Henry Jarmon and Bluman went in first, while I was taking my trunk off the sidewalk. I then followed them in. Bluman then said, 'Take out my wife's trunk the first thing.' So we took out the first trunk just a little piece from the door; it was pulled away from the end of the counter, ready to be taken out." West v. The State, 2 Texas Crim. App., 474.

If Kessel, Bluman's clerk, had refused to allow persons to remove goods from the store on the night of the fire, the State had the right to ask him if he was acting under Bluman's instructions. If Bluman was present at the time Kessel made the parties put down the goods, then the testimony was admissible. The answer of the witness could not have damaged the defendant.

The witness Kessel testified that he did not remember whether he told Kirk or Hillsman not to remove any goods from the house. On cross-examination by defendant he testified: "I don't remember of Bluman telling me not to let anybody take goods from the store." Kessel also testified that Bluman was present all the time he was in the store the night of the fire.

The indictment was simply against Bluman as an accomplice and he alone was upon trial. Therefore Mrs. Kirschner was a competent witness. It is only where the husband is upon trial that the wife is not a competent witness.

The defendant Bluman was indicted as an accomplice and was alone upon trial. Dill v. The State, 1 Texas Crim. App., 278; 1 Greenl. on Ev., sec. 342; Whart. Crim. Ev., sec. 392.

There was no injury done the appellant by the question and answer complained of, and if error it was harmless.

On cross-examination Mrs. Bluman was asked: "Did you not state at the hotel on the night after the fire that you had a presentiment that something was going to happen?" To which the witness answered: "We were playing cards, and I said to Mrs. Griffith that I feel like something has happened at home. I haven't heard from home in several days." On re-examination by the defendant the witness testi-

fied: "I stated in the presence of a number of persons that, because I had not received a letter from home in three or four days, and I had always gotten a letter almost every day, I thought something was going to happen."

The court in plain and direct terms instructed the jury that Paul Kirschner was an accomplice, and that the appellant could not be convicted on his testimony alone, but that it must be corroborated.

The court instructed the jury that Kirschner must be corroborated in his testimony connecting Bluman with the arson.

There was direct and positive evidence connecting Bluman with the offense, outside of the circumstantial evidence introduced, and it was not necessary for the court to charge upon the law governing circumstantial evidence, especially when the defendant did not request a charge upon this point.

There was no special exception reserved to any portion of the judge's charge, but simply a general exception, and there being no fundamental error in the charge of the court, appellant can not complain.

The court instructed the jury : "If the testimony of the witness Paul Kirschner, an accomplice in this case, has been corroborated, and the evidence then taken leaves you without reasonable doubt as to the guilt of the defendant, you should return a verdict of guilty; otherwise a verdict of not guilty." Also : "A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense; that is, if it merely shows a willful burning has been committed."

Kirschner testified that Bluman had agreed to pay him $500 to burn the house. That but two or three days before the fire Bluman came in his store and told him that the time to do it was while the women folks were in Austin, and that Sunday night was the time, etc.

Mrs. Kirschner testified : "A few days before the fire I heard a conversation in German between Paul Kirschner and Bluman. I came down stairs and I saw Bluman come in, and I stepped back a little because I did not want him to see me, and he came in and said to my husband : 'I am ready for it to go off Sunday night, as the women are off,' and they were talking about $40 or $50, which, as much as I understood, he promised to pay my husband Saturday or Sunday. That conversation was in my husband's store, and was two or three days before I went to Austin."

There was circumstantial evidence introduced in addition to the testimony of Kirschner and Mrs. Kirschner tending to connect the defendant with the crime.

There were no special instructions asked by the defendant, nor was any special exception reserved to any portion of the charge, but simply a general exception to it as a whole.

· The following authorities are cited on circumstantial evidence : Jones v. The State, 23 Texas Crim. App., 501; Jack v. The State, 20 Texas Crim. App., 656; Smith v. The State, 21 Texas Crim. App., 278; Leeper v. The State, 29 Texas Crim. App., 154.

And on failure to except to charge: Willson's Crim. Stats., sec. 2362; Finney v. The State, 29 Texas Crim. App., 185; Quintana v. The State, 29 Texas Crim. App., 402; Smith v. The State, 22 Texas Crim. App., 316; Lewis v. The State, 18 Texas Crim. App., 401.

The record in this case is so voluminous that it is hard to get all of the facts before the court in a brief. And while there may appear to have been errors committed in the trial of the case, we undertake to say, that if the court will examine the record carefully, it will be found that if any were committed they did not prejudice the cause of the defendant, and were harmless.

*R. L. Henry*, Assistant Attorney-General, also for the State, filed an able and interesting brief.

SIMKINS, JUDGE.—Appellant was indicted and convicted as an accomplice in the offense of arson, and his punishment assessed at five years in the penitentiary, from which he appeals.

1. The court did not err in overruling the motion for a continuance. The witness Hudson is not shown to have been sufficiently familiar with the Bluman stock as to have formed any definite idea as to its value. Nor does it appear that his estimate could or ought to have had any weight with the jury. If he had testified as appellant states he would, the testimony, in view of the facts proven, would have been probably untrue. Again, the witnesses who were to prove that Kirschner was suspected of burning his saloon in Austin were unimportant, in view of the facts that substantially the same testimony was introduced on the trial by the defense; and, besides, the said Kirschner was a self-confessed criminal, upon whose uncorroborated testimony no conviction could be had. Walker v. The State, 14 Texas Crim. App., 618; Tucker's case, 23 Texas Crim. App., 512.

2. Nor did the court err in admitting proof of the confession of George B. Jones. The appellant was indicted as an accomplice, and Paul Kirschner and George B. Jones were charged as principals, and it devolves on the State to prove the guilt of the principals. Penal Code, art. 89; Arnold's case, 9 Texas Crim. App., 438; Crook's case, 27 Texas Crim. App., 239. And no error is shown in the failure of the court to limit this evidence to the proof of the guilt of Jones, for the reason that the testimony in no way implicated Bluman. On the

contrary, it was shown by said evidence that Jones was ignorant of the fact that Bluman was implicated in the crime, and seemed surprised to learn it. Had the court so limited the evidence, it would have been urged as error, because it excluded testimony tending to acquit appellant.

3. Appellant complains that the court erred in admitting on the trial of this case the testimony of Mrs. Kirschner, the wife of one of the principals in the crime. It appears that Kirschner was not indicted for the crime in the present indictment, which is exclusively against Bluman as an accomplice; that neither Kirschner nor Jones was upon trial. Again, it is shown that, when her testimony was offered, Kirschner, her husband, had taken the stand, and had fully and freely testified as to his own guilt. The reason of the rule that excludes the testimony of a wife when her husband is jointly tried with others is, because her testimony may injure him, and, upon sound principles of public policy, she can not be heard to testify against her husband. It was so held in the Dills' case, 1 Texas Criminal Appeals, 278. But this rule can have no application where the husband is not indicted and upon trial, and where he has confessed his guilt, and we see no error in the admission of the testimony. 1 Greenl. on Ev., 342; 1 Whart. Crim. Ev., 392.

4. In the fourth, seventh, and eleventh errors appellant complains of the error of the court in admitting evidence that Kessel forbade the removal of goods during the fire because it might affect a recovery on the insurance policies. The evidence shows that Kessel was appellant's clerk, who kept the store key, and he and appellant entered the store together, and after the trunks were taken out (claimed by Bluman to contain his wife's trousseau, but said by the insurance adjusters to contain clothing from the stock), that he was asked by Kessel whether they should save any of the stock; that he said not to do so, but that afterwards he said to save some of the best clothing; and that he, Kessel, and a negro each took an armful, and this was all that was saved—the parties carrying off the goods to the hotel. Not only that, but a witness states he took up an armful of goods, and was told by Bluman to put them down. Bluman himself only carried out a book. And in this connection it is difficult to see how the adjusters could have allowed Bluman $375 salvage on clothing, unless the three trunks claimed by him to contain his wife's trousseau and bridal presents were in reality filled with clothing out of the store, as stated by the adjusters, and the clothing must have been packed in the trunks in anticipation of fire. We think, as disclosed by the record, Kessel was acting under the instructions of appellant when he forbade the goods being taken, and, if not, it was simply what Bluman was doing himself; and, if error to admit the testimony, it was harmless. We think the charge was sufficient, and was as favorable as appellant could ask. There was

no exception taken to any part of the charge, and we find no injury to appellant therein.

We have carefully examined the voluminous record in this case, and, despite the splendid defense interposed in his behalf, we think the evidence sustains the verdict. The evidence establishes an excessive insurance of appellant's stock, it being insured at double its value; that he was anxious to close out his business and move from Giddings; that he purchased but few goods and had allowed his stock to run down, and bought out his partner's (his brother-in-law's) interest, at $1150, a short time before the fire; that three weeks before the fire he sent down three trunks to the store, that were found filled with clothing goods after the fire; that on Sunday, before the fire that night, he spent most of the day in the store, taking a rough statement of his stock, and left his safe unlocked, expecting a fire; that he only saved his check book and stub book, but not his book containing merchandise accounts, and thereby succeeded in having a false credit of $1500 allowed by the adjusters; that he was in his room, dressed, when the fire broke out, after 11 o'clock, was restless that night in the hotel, and after the fire was in an unusual happy state of mind, and liberally treated the crowd at the hotel, and stated to several he was fully insured, and gave the amount; that at the trial he claimed to have destroyed the memoranda by which he affected a settlement of his insurance. Appellant's statement was contradicted by nearly every witness, in everything connected with the fire. It is also shown that the appellant knew Kirschner before he came to Giddings to do business, and, as Kirschner states, assisted him in getting a place next to himself. When we add to this the direct statement of Kirschner that Bluman, whose store joined his, offered him $500 to burn his store, and paid him a portion of it, and the statement of Emma Kirschner, his wife, who heard the final conversation between them, we think the jury was fully justified in finding the verdict. We are aware of the character of the witness Kirschner, but it does not appear that he is to be released on account of his convicting appellant. On the contrary, it appears that he is to be indicted as principal, and prosecuted for this very crime; and there is no suggestion of any ill-will between the witness and appellant, nor any motive for implicating appellant, except the truth.

There is no error in the record, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.

## ON MOTION FOR REHEARING.

HURT, PRESIDING JUDGE.—Conviction for arson. Paul Kirschner and George B. Jones, as principals, and H. Bluman, as accomplice, were jointly indicted for the arson. The prosecution against Kirschner

was pending, not having been nolle prosequied. Mrs. Emma Kirschner, over objections of appellant—he being on trial—was permitted to testify against him. Paul was also present and testified. The husband being indicted for the same offense, and the prosecution still pending, was his wife a competent witness against appellant? The Code has made no provision regarding this question; hence, the rules of evidence known to the common law of England apply. Code Crim. Proc., art. 725. And, when ascertained, the rules of the common law are as binding on this court, and to the same extent, as if written in our Code or statutes. What, then, is the rule known to the common law of England? At common law, neither could be a witness for or against each other, except in certain cases not necessary to be mentioned here; and as our statute permits them to be witnesses for each other, the common law furnishes but little light on the question. The doctrine which should prevail under such statutes as ours is, that if the husband, being indicted for the same offense, is a competent witness, his wife is also. Whart. Crim. Ev., sec. 391. If the husband be on trial, the wife can be a witness for, but not against him. Code Crim. Proc., art. 735. If a codefendant be on trial, the one not on trial may be made a witness by the State; and then the witness' wife is a competent witness also. See Blackburn v. The Com., 12 Bush., 181; Ray v. The Com., Id., 397; The State v. Smith, 2 Ired., 402. In the Dill case, 1 Texas Criminal Appeals, 278, the record did not show but what Bell was on trial when his wife testified. Rex v. Smith, 1 Moody Cr. Cases, 289, and Rex v. Hood, Id., 281, do not support the position of appellant. The defendant proposed to use as a witness the wife of one of the defendants who was on trial, in behalf not of the husband, but his codefendant. This was not permitted. Why? Because her evidence might inure to the benefit of her husband. Rex v. Smith, supra. We are of opinion that Mrs. Kirschner was, under the circumstances of this case, a competent witness.

Paul Kirschner was an accomplice. This is conceded. His wife, Emma, was introduced as a witness for the State. She states: "A few days before the fire I heard a conversation in German between Paul Kirschner and Bluman. I came down stairs, and saw Bluman come in. I stepped back a little because I did not want him to see me. He came in and said to my husband: 'I am ready for it to go off Sunday night, as the women are off.' They (her husband and Bluman) were talking about forty or fifty dollars." Under the circumstances of this case, if, indeed, appellant made these remarks to Kirschner, they would be very strong facts of his guilt. Kirschner makes out a clear case against appellant. But he confesses his guilt fully, is an accomplice, and must be corroborated. The corroboration is obtained from the evidence of Mrs. Kirschner, above stated. But counsel for appellant contend that the wife can not corroborate her

husband. In the absence of a statute in this State, we are, by our statute, forced to the rules of evidence known to the common law of England. How stands the common law on this question? In Rex v. Neal, 7 Car. & P., 168, "the prisoners were indicted for stealing a sheet, the property of Alban Bull. It appeared that the stolen sheet was found in the house of William Brain, who was admitted king's evidence, and Brain gave evidence to show that the prisoners stole the sheet. Park, J.: What evidence have you, Mr. Walesby, to confirm the accomplice's statement? Walesby (for the prosecution): The wife of the accomplice. Park, J.: Have you no other confirmation? Walesby: No, my lord. Park, J.: Confirmation by the wife is, in a case like this, really no confirmation at all. The wife and the accomplice must be taken for one, for this purpose. The prisoners must be acquitted." We have examined the authorities accessible to us bearing upon this question. The Neal case seems to stand alone. Of this case Mr. Phillips observes "that its circumstances might have been such as to warrant this decision." "But it may often happen that the evidence of the wife is so free from suspicion, so independent of the evidence of the husband, so manifestly unconcerted and uncontrived, and so undesignedly corroborative of his evidence, that it might be proper not to consider the accomplice and his wife as one, but to act upon her evidence as sufficiently corroborating." "The fact of the relationship, and the danger of marital domination on the part of the husband, go, it is true, largely to assail the credibility of the wife, but not to her competency; and the degree of weight which should be accorded to her testimony must be left to the jury. It may sometimes constitute very weak corroboration, yet it can not justly be said to be absolutely no corroboration at all. The case bears no similitude to that of an accomplice, whose testimony, it has been held, can not confirm that of another accomplice in the same crime." Woods v. The State, 76 Ala., 35.

Under the circumstances of this case the theory of the prosecution was, of necessity, that appellant burned the house to defraud the insurance companies. The accomplice swears to this motive, and the State sought, naturally, to corroborate him by the proof of circumstances tending to show motive. Judge Kirk was at the store while it was burning. He, while on the stand as a witness for the State, was asked these questions: "Did you make any effort to move goods from Bluman's store? Did you pick up any goods? And if you did not pick up any, state why not." Defendant objected, because (1) it was irrelevant and immaterial; (2) because defendant was not present, and was not responsible for the acts of others or what others said. These objections were overruled, and the witness answered that when the fire was raging he and others broke one of the doors, and he, or some one of the crowd, gathered up an armful of clothing to take out; but

some one—a stranger to him—remarked that Kessel told them not to take out the goods; that it might affect the recovery upon the insurance policies; and that the goods were thrown down and they all went out. Kessel, being on the stand as a witness for the State, was asked: "Did you tell Mr. J. S. Hillsman that night, when you were in the store, not to take any goods out of it?" Defendant objected, on the ground that the question was leading, immaterial, and that defendant was not present. The objections were overruled, and Kessel answered: "I don't remember if I did or not; I don't remember it. But if Mr. Hillsman said that I did, I will not dispute his word about it." Counsel for the State asked the witness the same question with reference to what he may have said to Judge Kirk, defendant making the same objections. The court overruled the same, and the witness made similar replies. B. C. Dodd, for the State, was asked: "Do you think that, if Bluman had tried, he could have saved any of his goods?" The defendant objected that the question called for the mere opinion of the witness; that witness was not present or in a position to judge what appellant could do. The objections were overruled. The State further asked the witness, "How many goods were saved out of the Harris house that night?" defendant objecting, because immaterial and irrelevant. The objection being overruled, the witness answered: "I should think there were probably seven or eight of us carried out five or six bundles of clothing apiece to the office of the lumber yard."

If Bluman instructed his clerk Kessel not to save any of his goods, this fact was evidence against him. If he did not, the acts and declarations of Kessel were not evidence. If Kessel had sworn that defendant had so instructed him, and Bluman had sworn he had not, what Kessel said to others was not evidence to corroborate him. (This by the way.) Had Bluman, by act or word, given Kessel such instructions? Bluman says that he had not. What says Kessel? "I do not remember of Bluman telling me not to let anybody take out goods from the store." Kessel further states: "I carried two armfuls of clothing from the store in all. Bluman told me to save the best clothing. I saw Henry Jarman carry out one armful, but that is all. Bluman told me to save the best clothing. I saw Tom take one armful of pants; don't think he took any more. There was a keg about half-full of powder in the north room of the store. We had no oil. I told Bluman to get out of the store—the powder might explode and blow him up. I heard it explode afterwards."

There is no evidence that Bluman instructed Kessel not to save the goods. On the contrary, Kessel's and Bluman's acts conclusively disprove such instructions. To authorize the admission in evidence of the acts and declarations of Kessel and others, they must have been made and done by authority of Bluman. The State failed to prove such authority, and the circumstance, to wit, appellant's instructions

to Kessel to save the best of the clothing, and the act of Kessel, saving the clothing, negative with great strength such authority. But it may be contended that there was authority, because Bluman prohibited the negro from taking out goods. The negro swears to this. Bluman denies it. But, concede that this negro was told not to take goods, does it follow that he did not want them saved? By no means. There might have been wise reason for this. Appellant's conduct in this respect might have been to the interest of the insurance companies. He may have feared that the negro intended plunder. But appellant denies that he told the negro to put down the goods. Here was an issue of fact, and the court should not have permitted the State to corroborate the negro by the unauthorized acts and declarations of Kessel and others. If Kessel had been directed by appellant not to save the goods, this fact was competent evidence to prove that he intended to defraud the insurance companies, and also to corroborate the negro. But, if he had not so been directed, the acts and declarations of Kessel and others, not occurring in his presence, were not evidence for either purpose.

The testimony of Dodd was evidently inadmissible. He was not an expert at saving goods from a burning house. Neither, indeed, could he or any other person be an expert at such business. Why? Because the circumstances and conditions attending the burning of different houses are so varied and distinct as to preclude the possibility of any person being an expert. The extent and situation of the fire, the material of which the house was constructed, the danger attending those engaged in the salvage, the number and zeal of those engaged in the work, are some of the circumstances which enter into the problem as to how many goods may be saved from a burning house.

Were the acts and declarations of Kirk, Hillsman, and Kessel, and the testimony of Dodd, harmless? The theory of the State is, that Bluman desired the goods burned in order to get the insurance. The State persistently urged these circumstances. It is first found in Kirk's testimony, then in the testimony of Hillsman, and finally Kessel is permitted to state, that if Hillsman stated that he directed that goods should not be saved, he would not deny the statement. All of the circumstances tended to establish the State's theory; and in line with these facts, and for the same purpose, the testimony of Dodd was received. To the introduction of all this matter counsel for appellant objected. The court overruled the objections, and it went to the jury as evidence in the case. In what light had the jury the right to, and probably did, view this evidence? Evidently as strong testimony in support of the theory of the State, that Bluman desired the goods should be burned, so that he could obtain as much of the insurance money as possible, and that therefore he must have advised, agreed to, and hired Kirschner to burn the house for said purpose.

Appellant introduced in his behalf his wife, Mrs. Nora Bluman, who testified on direct examination about having her trunks, containing her wedding trousseau and solid silver presents, placed in the store, down-stairs, a few weeks before the fire, and about having her wedding trousseau, silver, etc., placed up-stairs, and that everything up-stairs was burned up. Upon cross-examination, counsel for the State asked her: "Did you not, at the hotel, on the night of the fire, after the fire had broken out, state that you had a presentiment that something was going to happen?" Defendant objected, because the witness was the wife of defendant, and on her direct examination she had not been asked about such things, and that the question was not permissible on cross-examination of the wife. Objections were overruled, and Mrs. Bluman answered, "I did so state." The wife can be a witness for, but not against her husband. The cross-examination must be confined to the matter elicited by the direct examination. This is the settled rule. The State could have examined Mrs. Bluman fully as to the trunks, their contents, when they were placed in the store, etc., and if she had made other statements regarding these things this could have been shown. What relation or pertinency a presentiment which she may have had bear to the testimony about the trunks, their contents, etc., we fail to perceive.

The Attorney-General contends that this matter was also without injury. It was not germane to the testimony in chief, nor did it tend to contradict her evidence in any legitimate manner. It was therefore the State's evidence. She was made a State's witness, and her evidence was a part of the State's case, just as if the State had introduced her, and proved by her that she had had a presentiment that something was going to happen, and that when the the fire broke out she stated the fact that she had had such a presentiment. Can it be contended that the State had the right to prove these facts by the wife of defendant? Certainly not. For what purpose could, and perhaps did, the jury use this presentiment of the wife? The witness was the wife of defendant—a relation than which none can be closer or more confidential. While the house was burning she speaks of this presentiment. The jury interprets and applies it to the burning of the house. Was it in fact a presentiment, or had she been informed by her husband that the store was to burn? All people do not believe that there is such a thing as a presentiment. Those who do may not have believed this to have been such, because now closely connected with the burning of the store. For what purpose could the jury have used this matter? Evidently to prove that appellant had determined to burn, or have burned, his store, and had directly or indirectly informed his wife of his intentions. The State certainly desired to use it for this purpose. There was no other possible use to which it could be applied. But it may be urged that Mrs.

Bluman gave such an explanation of her presentiment as to eliminate from it all that which was pernicious. This proposition is correct, and should solve the question, injury vel non, against the appellant, but for one stubborn fact which can never be settled by this record— did the jury believe her explanation? We know not, nor does any other person know, save the jurors who tried the case.

Rehearing granted, the judgment reversed and cause remanded.

*Rehearing granted, and cause reversed and remanded.*

DAVIDSON, Judge, concurs.
SIMKINS, Judge, dissents.