MEMORANDUM OPINION



No. 04-06-00375-CR



Carlos RIVAS,


Appellant



v.



The STATE of Texas,


Appellee



From the 175th Judicial District Court, Bexar County, Texas


Trial Court No. 2003-CR-10018


Honorable Mary Roman, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Steven C. Hilbig, Justice


Delivered and Filed: June 6, 2007


AFFIRMED

 Carlos Rivas was found guilty of four counts of aggravated sexual assault and one count of
indecency with a child. On appeal, he argues that (1) the report of the sexual assault nurse examiner
should not have been admitted in evidence because it constituted improper bolstering of the
complainant's testimony and violated Texas Rule of Evidence 403, and (2) the trial court should
have granted his motion for mistrial because during closing argument in the punishment phase of the
trial, the prosecutor characterized him as a "monster." We affirm the judgment of the trial court.

Background


 Rivas's step-daughter, C.C., testified at trial that Rivas sexually assaulted her on multiple
occasions. C.C., a ten year-old-girl, testified that when she was seven years-old, Rivas touched her
genitals with his hands, performed oral sex on her, and penetrated both her vagina and her anus with
his penis. (1) According to C.C., Rivas made her touch herself while he masturbated, and they would
then have a contest to "see who could make the white stuff come out first." C.C. also testified that
Rivas made her perform oral sex on him. 

 Detective Frederick Allen Roussel of the San Antonio Police Department's sex crimes
division testified that he investigated the allegations against Rivas. When he interviewed C.C., he
asked her to draw a picture to illustrate what had happened to her. According to Detective Roussel,
when C.C. was unable to draw what she wanted to illustrate, she began to simulate oral sex:

 Like I said, she was unable to draw what she wanted to get across, so she knelt down
on the floor and was sitting on the back of her calves. She took her hand and made
kind of a fist and . . . She doubled over, leaned forward with her hand like that, and
was motioning her hand up and down with her mouth open, moving her head up and
down . . . .


According to Detective Roussel, he became so uncomfortable that he opened the closed door to the
room: "So, I just opened the door a little bit, just because it was a little uncomfortable. I don't know
exactly why I felt like I had to open the door, but I wanted the door opened. So, it was just strange
seeing a seven-year-old demonstrate something like that that was fairly graphic and accurate." 

 Detective Roussel also testified that he interviewed Rivas. When asked on cross-examination
by defense counsel what Rivas had told him, Detective Roussel testified that Rivas said the
allegations were untrue and that the allegations were motivated by a custody issue over his and his
wife's infant daughter, R.R.

 Detective Roussel also testified that he searched the apartment where Rivas, his wife, C.C.,
and R.R. lived. During the search, an evidence technician, Detective Garcia, took photographs and
removed the bedding from C.C.'s room. Kimberly F. Landers, a forensic scientist with the Bexar
County Criminal Investigation Laboratory, conducted testing on the bedding and testified at trial that
she was able to identify the presence of sperm on the blue blanket taken from C.C.'s bottom bunk
bed. Robert Sailors, also a forensic scientist with the Bexar County Criminal Investigation
Laboratory, performed DNA analysis on the blue blanket and compared it to Rivas's DNA sample.
According to Sailors, Rivas was not excluded as a contributor of the human DNA identified on the
blanket; "[t]hat means the two genetic profiles, the one from the blanket and the one from Carlos
Rivas, they matched." Because he had a match, Sailors then considered whether the match was
coincidental or was a true match. Sailors determined that the profile observed on the blanket would
be expected to occur in one in eighty-seven quadrillion individuals in the Southwestern Hispanic
population. The profile would be expected to occur in one in every 127 quadrillion individuals in
the Southeastern Hispanic population. And, the profile would be expected to occur in one in every
746 quadrillion individuals in the Caucasian population. For the African-American population, the
profile would occur in one in every 16.7 quintillion individuals.

 Annette Santos, a sexual assault nurse examiner at the Alamo Children's Advocacy Center
examined C.C. She took a history from C.C. and performed a head-to-toe and an anal-genital
examination. She noted in her medical report that the results from the examination were normal. 

 Rivas testified on his behalf and denied the allegations. He claimed that he and his wife had
had sexual relations on the blue blanket found in C.C.'s room; that the blue blanket had been on his
and his wife's bed; and that he had no idea how the blanket had found its way to C.C.'s room.
Although Rivas and his wife had only been married a short time at the time C.C. made the
allegations against him, Rivas testified that he and his wife had a stormy and argumentative
relationship. According to Rivas, they had argued, and he told his wife that she could leave but could
not take their infant daughter. 

 Rivas was subsequently found guilty of four counts of aggravated sexual assault and one
count of indecency with a child. He was sentenced to twenty-five years imprisonment for the
aggravated sexual assault counts and to twelve years imprisonment for the indecency with a child
count, all to run concurrently. Rivas now brings this appeal. 

Medical Report


 In his first and second issues, Rivas argues that the trial court erred in overruling his
objection and admitting in evidence State's Exhibit 22, the report of the sexual assault nurse
examiner, for two reasons: (1) the report constituted improper bolstering of C.C.'s testimony; and
(2) the probative value of the report was substantially outweighed by the danger of unfair prejudice
in violation of Texas Rule of Evidence 403. We review a trial court's decision to admit or exclude
evidence under an abuse of discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim.
App. 2001). 

 At trial, Annette Santos, a registered nurse and a sexual assault nurse examiner at the Alamo
Children's Advocacy Center, testified that she examined C.C. on August 7, 2003. She identified
State's Exhibit 22 as the medical record of her sexual assault examination of C.C. According to
Santos, a medical examination has three parts: (1) the history obtained from the child and/or parent;
(2) the head-to-toe physical examination of the child; and (3) the genital and anal examination of the
child. The exam is performed for medical purposes to determine what happened, whether testing is
needed for sexually transmitted diseases, and whether there is any injury to the child. The examiner
also considers whether the child has behavioral or emotional symptoms, such as problems sleeping
or thoughts of hurting herself. 

 Here, the medical report, State's Exhibit 22, indicated that C.C. had the following
"behavior/emotional symptoms": problems sleeping ("can't sleep, wake at night"), problems in
school ("repeating 1st grade"), anger ("sad & mad about what he did"); and was a runaway ("one
time I packed a bag with my clothes and toys"). (2) Under the "physical symptoms/history" portion of
the report, there is a notation that C.C. had "vaginal irritation." In the "history of assault/abuse"
portion of the report, Santos wrote down C.C.'s description of the incidents of sexual assault. After
Santos took down the history, she performed a head-to-toe examination of C.C. and noted that the
physical examination was normal. She then did an anal and genital examination of C.C. and also
noted that the results were normal. 

 Rivas objected to the admission of this report as improper bolstering and a violation of Texas
Rule of Evidence 403. A general objection to "bolstering," however, is not sufficient to preserve
error, because it does not sufficiently inform the trial court of the nature of the objection. In re J.G.,
195 S.W.3d 161, 183 (Tex. App.--San Antonio 2006, no pet.). Before the adoption of the Rules of
Evidence, "bolstering" was a proper objection when one item of evidence was used by a party to add
credence or weight to some earlier unimpeached evidence that the same party had offered. McKay
v. State, 707 S.W.2d 23, 33 (Tex. Crim. App. 1985); Pless v. State, 576 S.W.2d 83, 84 (Tex. Crim.
App. 1978); Montoya v. State, 43 S.W.3d 568, 573 n.2 (Tex. Crim. App.--Waco 2001, no pet.).
"Under case law existing prior to the promulgation of the Rules of Evidence, bolstering an
unimpeached witness was 'automatically' error." Montoya, 43 S.W.3d at 573 n.2. However, although
the Texas Rules of Evidence incorporate some concepts from "bolstering" in Rules 613(c) and
608(a), the Rules do not contain a specific rule pertaining to or prohibiting "bolstering." See id.
Indeed, "nothing in the Rules prevents a party from adding credence to an unimpeached witness or
adding credence to other evidence as long as that additional evidence is relevant." Id. "In fact, the
Rules favor admissibility." Id. (citing Tex. R. Evid. 402, 403). "Given the focus of the Rules
favoring admission, as well as the lack of a specific prohibition of this type of evidence, an objection
that certain evidence is 'bolstering' in no way invokes the Rules or informs the trial court of the basis
for exclusion under the Rules." Id. As such, a party's objection must inform the trial court why or
on what basis the otherwise admissible evidence should be excluded. Id.; see also Cohn v. State, 849
S.W.2d 817, 819-21 (Tex. Crim. App. 1993). Here, at trial, Rivas did not identify which Rule of
Evidence, if any, was violated by the admission of the nurse's report. As such, he failed to preserve
his objection for appeal. (3)

 Rivas also objected at trial that the admission of the report violated Rule 403. On appeal,
Rivas argues that the trial court abused its discretion in admitting the report in evidence because the
probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

 Pursuant to Rule 403, relevant evidence "may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice . . . ." Tex. R. Evid. 403 (emphasis
added). "Probative value" refers to "the inherent probative force of an item of evidence - that is, how
strongly it serves to make more or less probable the existence of a fact of consequence to the
litigation - coupled with the proponent's need for that item of evidence." Casey v. State, 215 S.W.3d
870, 879 (Tex. Crim. App. 2007). "Unfair prejudice" is "a tendency to suggest decision on an
improper basis, commonly, though not necessarily, an emotional one." Id. Thus, the court of criminal
appeals has said that "[e]vidence might be unfairly prejudicial if, for example, it arouses the jury's
hostility or sympathy for one side without regard to the logical probative force of the evidence." Id.
at 880. 

 In considering whether the probative value of the evidence is substantially outweighed by the
danger of unfair prejudice, the trial court must balance (1) the inherent probative force of the
proffered item of evidence along with (2) the proponent's need for that evidence against (3) any
tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence
to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given
undue weight by a jury that has not been equipped to evaluate the probative force of the evidence,
and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time
or repeat evidence already admitted. Id. We review the trial court's ruling on the admission of the
evidence for abuse of discretion. Id. at 879. A trial court abuses its discretion when its decision lies
outside the zone of reasonable disagreement. Id. 

 In considering the above factors, we cannot say that the trial court's decision to allow the
report in evidence was outside the zone of reasonable disagreement. The report was probative - it
spoke directly to the offense. As such, it did not confuse or distract the jury from the main issue.
Although the report was cumulative evidence (C.C. having testified to the same events and the
sexual assault nurse having testified to her examination) and was, therefore, not essential to the
State's case, the presentation of the evidence did not consume an inordinate amount of time. It was
limited to one witness and, during the jury's presence, constitutes about six pages of the reporter's
record. Nor did the report have a tendency to be given undue weight by a jury that had not been
equipped to evaluate the probative force of the evidence. At the time of the admission of the report,
the jury had already heard C.C.'s and Detective Roussel's testimony. Thus, the description of the
assaults could not have surprised the jury. Finally, we emphasize that "unfair prejudice" does not
"arise from the mere fact that evidence injures a party's case"; "[v]irtually all evidence that a party
offers will be prejudicial to the opponent's case, or that party would not offer it." Casey, 215 S.W.3d
at 883. "Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a
defendant beyond tending to prove the fact or issue that justifies its admission into evidence." Id.
Rivas has not explained in his brief how the admission of the report was unfairly prejudicial except
to say that it "underlined a lot of testimony that was already before the jury." We, however, can find
no abuse of discretion by the trial court in determining that the probative value of the report was not
substantially outweighed by the danger of unfair prejudice.

 We, therefore, overrule appellant's first and second issues.

Jury Argument


 In his final issue, Rivas argues that the trial court should have granted his motion for mistrial
when, during closing argument at the punishment phase of the trial, the prosecutor called him a
"monster." We review a trial court's ruling on a motion for mistrial for abuse of discretion. Archie
v. State, No. PD-0051-06, 2007 WL 1260782, at *3 (Tex. Crim. App. May 2, 2007). As such, we
must uphold the trial court's ruling if it was within the zone of reasonable disagreement. Id. "Only
in extreme circumstances, where the prejudice is incurable, will a mistrial be required." Id. (quoting
Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). 

 During closing argument at the punishment phase, Rivas's counsel urged the jury to place
Rivas on community supervision:

 Is probation appropriate in this type of case? Only you know. Each person is judged
by those who know him best. And are they shocked? You bet. Are they concerned?
You bet. But this is the man right here, Carlos Rivas, whose fate you will decide
today. Look at him. Because the State is going to have a lot to say about him. The
State is going to have a lot to say about the poor little girl. The State is going to have
a lot to say about how lives have changed. Well, ladies and gentlemen, you are going
to effectuate change forever. You already have. But you are really going to effectuate
change now.


Defense counsel then reminded the jury that Rivas was a human being:

 So, what do you do? Where do you put him? Do you sentence him, throw away the
key? Is he salvageable? Is he a human being? I mean, those are serious, serious
issues and serious, serious questions. This family respects you because you are his
jury. If there was any doubt in your mind, if there was a mistake made, if some of you
weren't really sure, now is the time to make it right. Because once we all walk out
of here today, you can't do anything about it.


(emphasis added). Defense counsel then asked the jury not to give in to emotion but to agree on an
appropriate sentence. He concluded by calling Rivas a child of God:

 Now, when I go home tonight, my wife is going to ask me what happened today. I
have boys [who] would ask the same. And, I'm going to tell them I did everything
that I could today to save a child of God. What are you going to tell your family?
What are you going to tell this family? What are you going to tell C.C. and her
family? What are you going to tell yourselves? Thank you.


(emphasis added).

 In response, the prosecutor argued that Rivas should not be placed on community
supervision:

 Probation is not an option in this case. We do not send people out these front doors
into the elevators, down to the parking garage and out into the community to commit
the same crime over and over and over again. This is not a mistake. It's not an
accident. This is an individual who took careful attention, who took time, who waited
until mom was gone, who watched when mom was asleep, who took advantage of
every opportunity to take this child by himself into his room, into the bathroom, onto
her top bunk, behind the sheets, onto the floor, wherever he could, to lick her, to stick
his fingers inside of her, to put his penis in her mouth, and he did it time and time and
time again.


The prosecutor then compared Rivas to a monster.

 And go ahead and look at him. It's okay. Because you shouldn't feel guilty for
sending a guilty rapist to prison. You should feel proud of your choice. Happy, no,
but righteous because you are doing the right thing. They cannot make you feel guilty
for the choices that that man made. Those were his choices. And now, you have
found him guilty, and your choice is to say, we in Bexar County do not permit,
tolerate, allow or give a light punishment to anyone who abuses our children, the
children of our community.


 I'm not going to give you a number, because I believe that is up to you all. But I will
tell you this. I will ask you not to make [C.C.] look over her shoulder. I will ask you
not to make [R.R.] worry down the line when she finds out the monster, the kind of
monster that her father is.

 

 Defense: I object to the use of that word, Your Honor. That is totally
inappropriate.


 Court: Sustained.

 Defense: I ask the jury to disregard.

 Court: Please disregard.

 Defense: Move for a mistrial, Your Honor.

 Court: Denied.

(emphasis added).

 Rivas argues that the prosecutor characterizing him as a "monster" constituted improper jury
argument. Permissible jury argument must encompass one of the following areas: summation of the
evidence; reasonable deduction from the evidence; answers to opposing counsel's argument; or a
plea for law enforcement. Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). 

 While name-calling by the prosecution is generally improper argument, if the characterization
is supported by the evidence, then it is permissible as a reasonable deduction from the evidence. See
Burns v. State, 556 S.W.2d 270, 285 (Tex. Crim. App. 1977) (holding that reference to defendant
being an "animal" "was warranted" and was "not an improper deduction from the evidence"); Easley
v. State, 454 S.W.2d 758, 761 (Tex. Crim. App. 1970) (holding that use of "savage," while not to
be commended, was supported by evidence). Here, the evidence showed that Rivas sexually
molested and had sexual intercourse with his step-daughter, C.C., who was seven years-old. He
forced her to perform oral sex on him and, in turn, performed oral sex on her. As such, we hold that
the characterization of Rivas as a "monster" was a reasonable deduction from the evidence. See
Resendez v. State, No. 14-99-01374-CR, 2001 WL 777861, at *1-*2 (Tex. App.--Houston [14th
Dist.] 2001, pet. ref'd) (holding that prosecutor calling appellant a "monster" during closing
argument was supported by the record where the evidence showed that appellant had sexually
molested and had sexual intercourse with a female relative, who had been twelve years-old at the
time of the first assault); Davis v. State, No. 05-96-01949-CR, 1998 WL 324724, at *2 (Tex.
App.--Dallas 1998, no pet.) (holding that prosecutor calling defendant a "monster" was a reasonable
deduction from the evidence where the evidence showed that defendant held his wife down and
methodically carved and slashed her face, attempting to cut out her eyes, cut off her nose, cut off her
ears, and slash out her teeth).

 Alternatively, the State's argument was also proper, because it was a response to defense
counsel's argument. Defense counsel emphasized that his client was a human being and a "child of
God" whom he needed to save ("I did everything that I could today to save a child of God."). In
doing so, defense counsel painted Rivas as angelic. Thus, the State's use of "monster" was a proper
response to defense counsel's argument.

 Moreover, even if the State's argument had been improper, the trial court still did not abuse
its discretion in denying Rivas's motion for mistrial. Generally, any harm from an improper
statement in a jury argument is remedied when the court instructs the jury to disregard, unless the
remark is so inflammatory that the prejudicial effect cannot be removed by an admonishment. See
Johnson v. State, 698 S.W.2d 154, 167 (Tex. Crim. App. 1985). Here, the trial court gave a prompt
instruction for the jury to disregard. Therefore, any harm to Rivas was cured. See id. 

 We overrule Rivas's final issue.

Conclusion


 Having overruled all issues, we affirm the judgment of the trial court. 

 

 Karen Angelini, Justice

Do not publish


1. C.C. described these actions by various euphemisms ("private part," "back part," etc.); however, although
C.C. used euphemisms, her testimony clearly identified the parts of the female and male bodies at issue and the
actions that she claimed took place.
2. C.C. did not actually write these notations found in the medical report. According to Santos, she tries to
note the words of the child.
3. Indeed, on appeal, Rivas still does not identify which Texas Rule of Evidence was violated. See Tex. R.
App. P. 38.1(h) (requiring appellant's brief to contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record).